IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN D. WILLIAMS, #20431-045, | § | |
| PETITIONER, | § | |
| | § | |
| V. | § | CASE NO. 3:18-CV-1298-S-BK |
| | § | |
| M. UNDERWOOD, *WARDEN* | § | |
| RESPONDENT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, John D. Williams's petition for habeas corpus under 28 U.S.C. § 2241 was referred to the undersigned United States Magistrate Judge. As detailed herein, the petition should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Williams was convicted in the United States District Court for the Western District of Missouri of conspiracy to manufacture and distribute methamphetamine and aiding and abetting the substantial risk of harm to human life while manufacturing methamphetamine, in violation of 21 U.S.C. § 841(A)(1), (B)(1)(A); 846; 851; 858; and 18 U.S.C. § 2, and was sentenced to 300 months' imprisonment. Doc. 13 at 8. Williams challenges a prison disciplinary proceeding at FCI Seagoville on due process grounds. Doc. 3 at 5.

The proceedings were initiated against him on June 2, 2017, for violating a Federal Bureau of Prisons (BOP) disciplinary code for the use of narcotics. *See* Doc. 13 at 11-13. He alleges the evidence does not support the finding that he committed the prohibited act. Doc. 3 at 6. On June 2, 2017, Williams received an incident report charging him with "Use of Narcotics, Code 112," based

on his urine sample which tested positive for marijuana. Doc. 13 at 11. An investigation of the allegation was completed later that day. Doc. 13 at 11. After advising Williams of his rights, the investigating officer asked the Williams if he wished to make a statement, to which the Williams replied, "I have not done drugs in over ten years." Doc. 13 at 12. Williams requested no witnesses and the investigating officer referred the Incident Report to the Unit Discipline Committee (UDC). Doc. at 12.

A UDC hearing was held on June 6, 2017, during which, Williams stated, "I have been set up. I haven't touch[ed] any drugs in 10 years." Doc. 13 at 11. The UDC referred the Incident Report to the Discipline Hearing Officer (DHO) for a further hearing. Doc. 13 at 11. The UDC also provided Williams with a form tiltled, *Inmate Rights at Discipline Hearing*, which Williams signed acknowledging his receipt. Doc. 13 at 17. Although Williams did not request any witnesses, he did request a staff representative. Doc. 3 at 6.

A DHO hearing was held on June 21, 2017. Doc. 13 at 27. Relying on the statement of the reporting staff member and the results of Williams's urine sample that tested positive for marijuana metabolite, the DHO issued a written decision finding that Williams committed the prohibited act alleged. Doc. 13 at 27. The DHO additionally stated that it took the following into account:

> the Chain of Custody form, showing that [Williams] did provide the urine sample that tested positive for marijuana metabolite;
>
> the lab report from Phamatech Laboratories showing the sample [Williams] provided tested positive for marijuana metabolite;
>
> a memo from the Health Services Department at FCI Seagoville, who stated [Williams's] medical file had been reviewed and that [Williams was] not prescribed any medication that would have caused a positive reading for marijuana metabolite;
>
> [Williams's] statement that the cup in which [he] provided the urine sample indicated "negative" and that [he has] never been a marijuana user.

Doc. 13 at 27.

2

Based on this evidence, and "the fact that [Williams] provided no additional supporting information to support [his] denial of the charges," the DHO concluded: "the greater weight of the evidence provided causes the DHO to find that [Williams] did commit the prohibited act of Code 112 - Use of Drugs." Doc. 13 at 27. As sanctions, the DHO: (1) disallowed 27 days of Williams's "Good Conduct Time"; (2) imposed 15 days of disciplinary segregation, which was suspended pending 180 days of "clear conduct"; and (3) prohibited the exercise of visitation and email privileges for 60 days. Doc. 13 at 27. Williams was provided a copy of the original DHO report on June 29, 2017, Doc. 13 at 28, and was given an amended DHO report on December 6, 2017, after a typographical error regarding the sanctions was noticed, Doc. 13 at 25.

Williams filed an unsuccessful Regional Administrative Remedy Appeal on July 10, 2017, Doc. 6 at 5-7. His subsequent Central Office Administrative Remedy Appeal was also denied. Doc. 6 at 11-13.

In his Section 2241 habeas petition, Williams argues that the BOP took away 27 days of his good conduct in violation of his constitutional right to due process, in that the allegations against him were not proven by sufficient evidence. Doc. 3 at 6. He also asserts his staff representative "failed to adequately assist the presentation of [his] defense as expressly required by policy." Doc. 3 at 6. Williams requests the return of his good conduct time and that the incident report and disciplinary action be expunged from his record. Doc. 3 at 8.

## II. ANALYSIS

Under federal sentencing law, prison authorities may award credit to prisoners against their prison time as a reward for good behavior. 18 U.S.C. § 3624(b). Federal prisoners may contest the loss of these so called "good time" credits under 28 U.S.C. § 2241, which is the proper procedural vehicle for a prisoner to challenge "the execution of his sentence rather than the validity of his

3

conviction and sentence." *United States v. Cleto*, 956 F. 2d 83, 84 (5th Cir. 1992). If a petitioner "can show that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good time credits." *See Brown v. Smith*, 828 F. 2d 1493, 1495 (10th Cir. 1987) (citing *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983)). An inmate may not be deprived of good time credits for a disciplinary violation unless he is afforded due process. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Specifically, an inmate charged with a violation must be given (1) advance written notice of the charges, (2) the opportunity to appear and call witnesses, (3) the opportunity, in certain situations, for the assistance of a fellow inmate or staff, and (4) a written statement by the fact finder as to the evidence relied on for the decision. *Id.* at 563-70.

As detailed in the previous section, Williams was afforded all required due process during his disciplinary process. He received advanced written notice of the charges on June 2, 2017, Doc. 13 at 11; he appeared before the UDC on June 6, 2017, Doc. 13 at 11; and appeared before the DHO on June 21, 2017, Doc. 13 at 23-25. When Williams appeared before the DHO, he made a statement, presented no documentary evidence, and waived his right to request witnesses. *Id.* Williams also had the assistance of a staff representative, who appeared at the hearing and made a statement. Doc. at 23. Finally, Williams was provided a written statement as to the evidence the factfinder relied on and the reasons for the actions taken by the factfinder. Doc. 13 at 24-25, 27-28.

Williams claims that the DHO's findings were not supported by the evidence. Specifically, Williams argues that his urinalysis test results only show that he tested positive for "Marijuana Metabolite," which could have resulted from his "abundant" use of ibuprofen. Doc. 3 at 6.

In reviewing an institution's disciplinary actions, the Court need only consider if the decision was supported by "some basis in fact" or "a modicum of evidence." *Superintendent,*

4

*Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454-56 (1983); *see also Smith v. Rabalais*, 659 F. 2d 539, 545 (5th Cir. 1981) (citation omitted) (court should consider whether the disciplinary decision is "supported by 'some facts' 'whether any evidence at all' supports the action taken by the prison officials."). Federal court intervention is appropriate only when the DHO's action is "arbitrary or capricious." *Reeves v. Pettox*, 19 F. 3d 1060, 1062 (5th Cir. 1994). Moreover, the evidence need not eliminate all other conclusions, nor does the "some evidence" standard require a weighing of the evidence or an independent assessment of witness credibility. *Hill*, 472 U.S. at 455-56. An incident report alone can constitute some evidence. *See Johnson v. Hudson*, 242 F.3d 534, 536-37 (5th Cir. 2001).

      Here, there was clearly "some evidence" to support the DHO's finding. As recounted previously, the DHO relied on, among other evidence, the Chain of Custody form showing that Williams provided the urine sample that tested positive for marijuana metabolite, the lab report showing Williams's urine sample tested positive for marijuana metabolite, and a memo from the prison Health Services Department stating that Williams was not prescribed any medication that would have caused a positive reading for marijuana metabolite. Doc. 13 at 24. Although Williams argues the DHO "ignored available evidence that [he] regularly use[s] [ibuprofen]," which may have created a false-positive test result, this argument is unavailing. Williams provides no record evidence to support his argument. More importantly, in determining that the "some evidence" standard is met in this case, this Court does not weigh the evidence. *Hill*, 472 U.S. at 454-56. Additionally, in light of the DHO's review of Williams's positive drug test, there is no basis to conclude that the DHO's decision was arbitrary or capricious, *Reeves*, 19 F.3d at 1062.

      Williams also contends that his staff representative "failed to adequately assist the presentation of [his] defense as expressly required by the written policy." Doc. 3 at 6. He appears

to argue that his staff representative failed to assist in presenting the possibility that Williams's positive drug test was due to his heavy use of ibuprofen. *See* Doc. 3 at 6. Williams provides no support for this conclusory argument, other than a self-serving assertion that he "regularly use[s]" ibuprofen. *See* Doc. 3 at 6. "Although *pro se* habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

Williams also claims he qualifies for habeas relief due to violations of internal prison policies during his prison disciplinary proceeding; however, he is mistaken. "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996) (citations omitted). Moreover, to the extent that Williams argues that the failure to follow written prison policy caused an arbitrary result in his case, he has wholly failed to provide any evidence in support of this claim. Thus, he is not entitled to relief. *See Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1012.

### III. CONCLUSION

For the foregoing reasons, Williams's petition for habeas corpus under 28 U.S.C. § 2241 should be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on April 1, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

6

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).